UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **ERICA CARDENAS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**CAPITAL INFUSION LLC**, a Florida registered company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# CLASS ACTION COMPLAINT

Plaintiff Erica Cardenas ("Plaintiff Cardenas" or "Cardenas") brings this Class Action Complaint and Demand for Jury Trial against Defendant Capital Infusion LLC ("Defendant" or "Capital Infusion") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls and text messages to consumers without consent including calls and text messages to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls and texts stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Cardenas, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Cardenas is a resident of Chula Vista, California.

1

2. Defendant Capital Infusion is a corporation registered in Miami, Florida. Defendant Capital Infusion conducts business throughout this District and throughout the US, including California.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is headquartered in this District and places telemarketing calls to consumers from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in this District.

**INTRODUCTION**

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in January 2024 alone, at a rate of 137.9 million per day. www.robocallindex.com (last visited February 18, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Capital Infusion provides capital loans to businesses throughout the US.

15. Capital Infusion places solicitation calls to businesses that may require capital funding.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

16. Capital Infusion also calls phone numbers that belong to consumers, as per Plaintiff's experience.

17. In job postings for an Account Executive, Capital Infusion specifically lists cold calling as a required experience and within the qualifications:



18. Current Financial Sales Advisor Flavia Barragan listed cold calling as a skill she acquired working at Capital Infusion:

---

[3] https://www.simplyhired.com/job/G2oRcNeGXKlX5mQs8XiRB9AuxMHU7WxV48PwcpujZnMHZoW6rySL-Q

4


**Flavia Barragan**
Financial Advisor @Capital Infusion | Record of Success

**Cold Calling**

 Financial Sales Advisor at Capital Infusion[4]

19. Unfortunately, some of these calls and text messages from Capital Infusion are being placed to consumers' phone numbers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

20. To make matters worse, Capital Infusion lacks a sufficient opt-out system to ensure that a consumer who notifies Capital Infusion to stop calling/texting them, will be removed from their contact list.

21. Consumers and businesses have posted complaints online about unsolicited calls and text messages they received from Capital Infusion, including complaints from consumers who received additional unsolicited calls after telling the Defendant to stop calling, including:

- "**** called my phone despite being told repeatedly to remove me from the he argued with me and insisted on continuing the conversation. I told him over and over again to remove me from the call list and asserted that because I answered the phone to tell him not to call me I must have wanted to what he had to say. He said he was his own supervisor. He continued to attempt to talk over me. ***They call at all hrs of the day and night I once got a call at 6:30 in the morning. I informed him that this harassment is against the law*** and I was not interested in anything he had to say. The fact that this company allows and encourages this type of harassment is unconscionable. I've blocked this number but I'm sure he'll call from another number.[5] (emphasis added)

---

[4] https://www.linkedin.com/in/flavia-barragan-28a2aa1aa/details/skills/
[5] https://www.bbb.org/us/fl/miami/profile/financial-services/capital-infusion-llc-0633-90554088/complaints

- "*** argued and ***begged to not be called at all but they call daily*** where Im at the point to file harassing phone call charges! Unprofessional,annoying company!!!"[6] (emphasis added)
- "They ***spam daily*** and I do not have any reason for them to be calling me. Then ***I requested for them to stop calling me and they called me a derogatory term***. It was completely unacceptable and I have no reason why this company continues to call me regularly and ***even after requesting to remove my number from there call list***."[7] (emphasis added)
- "They have ***spam phone called me repeatedly even AFTER being asked to NOT call again and to take me OFF of their list*** and their parent company's."[8] (emphasis added)
- "This company does not respect businesses or people. ***I asked to be taken off the contact list AT LEAST 10 times. Several people continued to contact me through text message***, the most pushy and intrusive being "**** ********" with the number (***)-********. He texted me, asking if I needed funding. I told him, "no. I've asked to be taken off the list several times and to stop contacting me." A few days later he calls and when I ignore his call he texts me immediately after asking intrusive financial questions and wanting to establish a "mutually beneficial relationship". This company oozes desperation and makes me question the validity of its business. It feels like a massive ****. Do not show any interest in them or you will be harassed for months on end."[9] (emphasis added)
- "They use spam text marketing. One guy said he was with the Fund Zone before revealing capital infusion was the company behind it."[10]

**Horrible company cold call you harass…**

Horrible company cold call you harass to get funding and then gets rude and can't deliver and waste your time … stay away from this company this is amity merchant cash advance company.

- **Date of experience:** 16 February 2024 [11]

---

[6] https://www.bbb.org/us/fl/miami/profile/financial-services/capital-infusion-llc-0633-90554088/customer-reviews
[7] Id.
[8] Id.
[9] Id.
[10] Id.
[11] https://uk.trustpilot.com/review/infusioncapital.org

6

> **Guy cold called me and when I politely…**
>
> Guy cold called me and when I politely declined (and explained why) he just hung up on me. Screw you guys.
>
> - Date of experience: 01 February 2024 [12]

> **Cold call was pushy - quasi predatory lending**
>
> Received a cold call from Juan H., which is fine. Which wasn't fine is that when I respectfully told him I didn't need capital because my business was cash positive... he was VERY pushy and debated with me why I need capital... Why would I spend 30-40% on interest when I don't need it? But he was super pushy and it was clear he didn't care if it would be a bad decision for my business to take on a 30-40% loan when I don't need it. Basically, PREDATORY LENDING. Hate businesses like this.
>
> - Date of experience: 17 January 2024 [13]

> **This company has called me incessantly…**
>
> This company has called me incessantly for days. Somehow my number got to a large group of these "small business capital lenders" and this appears to be the worst of the bunch. I have repeatedly requested to be removed from their call list, I did not ask to be called or texted and I did not seek such a loan, nor do I have a company that would seek such a loan. They continue to call and are rude when I tell them I want to be taken off their list. This is illegal behavior in violation of the TCPA which carries stiff penalties. Any TCPA plaintiffs lawyers are welcome to call me as a potential plaintiff.
>
> - Date of experience: 29 September 2023 [14]

22. In response to these calls and text messages, Plaintiff Cardenas brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF CARDENAS'S ALLEGATIONS

23. Plaintiff Cardenas is the sole owner and user of her cell phone number ending in 5615.

24. Plaintiff Cardenas has owned her cell phone number for over 10 years.

---

[12] Id.
[13] Id.
[14] Id.

7

25. Plaintiff Cardenas registered her cell phone number on the DNC on November 9, 2023.

26. Plaintiff Cardenas uses her cell phone number for personal use only as one would use a landline telephone number in a home. She has never had her cell phone number associated with a business.

27. Throughout the second half of 2023 and into 2024, Plaintiff Cardenas has received unsolicited calls regarding business finance loans and credit. The callers have been asking consistently to speak to Eric Thompson.

28. Plaintiff Cardenas does not know who Eric Thompson is.

29. Plaintiff Cardenas received unsolicited calls and text messages specifically from Capital Infusion regarding soliciting business capital for Eric Thompson.

30. Plaintiff Cardenas has told the Capital Infusion employees to stop calling and texting, but the calls/texts continued.

31. On January 17, 2024 at 3:44 PM, Plaintiff Cardenas received a call to her cell phone from Capital Infusion, from 305-537-9324.

32. When Plaintiff answered this call, an employee named Ray Ortega began a solicitation for business funding, asking how much he could provide a loan for Plaintiff Cardenas.

33. Plaintiff Cardenas told Ortega that she does not require capital and does not have a business. She then asked Ortega not to call her again.

34. Ortega immediately called Plaintiff Cardenas back at 3:45 PM on January 17, 2024. Plaintiff Cardenas answered this call, told Ortega to stop calling and then quickly hung up.

35. 305-537-9324 is owned/operated by Ray Ortega.[15]

36. Roy Ortega is a Capital Infusion Business Funding Executive:

[16]

37. The calls Ray Ortega made were in his capacity as working for Defendant Capital Infusion.

38. On February 13, 2024 at 10:25 AM, Plaintiff Cardenas received an unsolicited text message to her cell phone from Capital Infusion, from 786-725-5935.

39. In response to the text message, which references previous text messages that Plaintiff Cardenas received, Plaintiff replied back immediately asking who the company is.

40. Plaintiff received a response right away stating "Capital infusion."

---

[15] https://www.dropbox.com/s/53zabm46fomwnte/305-537-9324%20Investigation%20Call.mp4?dl=0
[16] https://www.capital-infusion.com/team



41. Plaintiff Cardenas has never done business with Capital Infusion.

42. The unauthorized solicitation telephone calls and text messages that Plaintiff received from or on behalf of Defendant Capital Infusion have harmed Plaintiff Cardenas in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

43. The calls also caused undue distress as Plaintiff was unable to get the calls/texts to stop by asking Capital Infusion to stop calling/texting her cell phone number.

44. Seeking redress for these injuries, Plaintiff Cardenas, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

45. Plaintiff Cardenas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Capital Infusion called and/or texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Capital

Infusion called or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling/texting.

46. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Cardenas anticipates the need to amend the Class definition following appropriate discovery.

47. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

48. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple calls/text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

49. **Adequate Representation**: Plaintiff Cardenas will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Cardenas has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Cardenas and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Cardenas nor her counsel have any interest adverse to the Classes.

50. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Cardenas. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides

the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Do Not Registry Class)**

51. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

52. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

53. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

54. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Cardenas and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

55. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Cardenas and the Do Not Call Registry Class received more than one telephone call/text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

56. As a result of Defendant's conduct as alleged herein, Plaintiff Cardenas and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

57. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Internal Do Not Call Class)**

58. Plaintiff repeats and realleges paragraphs 1-50 of this Complaint and incorporates them by reference herein.

59. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a

14

reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60. Defendant placed calls and text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

61. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

15

62. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Cardenas requests a jury trial.

DATED this 20th day of February, 2024.

                                          **ERICA CARDENAS**, individually and on behalf of all others similarly situated,

By: /s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881


*Attorneys for Plaintiff and the putative Classes*